Your Honor, this is a clear case. I mean the main issue in this case is whether the government has met its burden approved by clear and convincing evidence that my client smuggled or tried to smuggle her brother into the United States. And we believe that the record shows clearly that the government's reliance on highly prejudicial hearsay evidence makes this case highly unconvincing. The government did not prove its case by clear and convincing evidence that my client smuggled her brother into the United States. They relied on statements from her brother who was himself subject to prosecution for illegal reentry and for also having an altered green card in order to prove their case. The immigration judge... So her brother, Sandro, is that his name? That's right, Your Honor. And he's liable for prosecution? For illegal reentry, he was liable for prosecution. So the statements that he made could be used against him? Yes, Your Honor, in a criminal case. Why aren't those then, if you take a look at this in terms of hearsay, declarations against penal interest? Your Honor... Which would mean some indicia of reliability. Your Honor, in this case, this court has already found that to be not admissible in court. In a case called Gauderama-Hernandez v. Gonzalez, recently this court has held that statements from a self-interested witness who himself is subject to criminal prosecution are not admissible. No, that's not quite what they held. They held that if someone's deported by the government, and then you use the statements. Your Honor, in this case, Sandro was not... It's not that a hearsay statement is inadmissible in itself, because it's... Whether if a government makes a witness unavailable, then the statement may be admissible. Your Honor, but in Gauderama, this court held that the government has an obligation to first make available or make good faith effort to find that witness. Only then... But that's a different question and a different proposition than you were just advancing. Your Honor, but the thing is, in this case, the statements from her brother was relied extensively by the immigration judge in coming to this conclusion. What I was trying to get at is, why are those statements unreliable? They're unreliable, Your Honor. Number one, respondent did not get the opportunity to cross-examine her brother, and to cross-examine the evidence that was presented by the government. And this court has held that an alien has an opportunity... I mean, has a right to a full and fair hearing, where he can cross-examine the witnesses or evidence presented. And reasonably, respondent... Excuse me, the petitioner did not get that. The one glaring difference between this and the case you cite is this is the brother. And one might think, as a matter of common sense, that a brother would be available to the sister. Your Honor, but in this case, the burden was on the government. The government introduced that statement. You're saying as a matter of law, it's irrelevant how close the two are. I believe that in this case, yes, Your Honor, it is irrelevant. Because the immigration judge cannot place the entire burden of confronting this witness on my client and confronting this evidence. I mean, my client was in detention. There's no way she could have contacted her brother who was already deported. The government deported my client... You say that, and I hear lawyers say that all the time. There's no way. I mean, you can't accept that. Your Honor, in this case... The record wouldn't support that one way or the other. Did she make a record that there was no way I could contact my brother? No, Your Honor, she did not. But in immigration court, Your Honor, the immigration judge has an affirmative obligation. This court has held that immigration judge has the obligation to develop the record fully. Does it make a difference because she herself admits making two statements? Your Honor, those statements are highly unreliable because she admitted, and she stated at the hearing, that she made those statements because she was tired, she was exhausted. This was her fourth interrogation. Yeah, the hearing officer said, wait a second. Isn't it funny that if she was so tired that she said, well, actually, I did know about the brother, but I didn't know about the other two people. And she made quite a fine distinction in her admission, didn't she? Your Honor, if you look at the record, it's very vague and unclear. First of all, when she made that statement, previously she said, you know, when the government investigator asked her that question, she said, yes, I knew, and no, I didn't. And kind of there were a lot of vagueness in that argument, and I believe that the immigration judge did not. What page are you looking at for that testimony? Your Honor, I am looking at page number, on the record of proceeding, 218. At the very last, Your Honor, it's. Thank you. Yes, Your Honor. I appreciate it. Thank you. Thank you. Thank you. We have the immigration judge made a credibility finding based on a whole series of events with respect to your client. And even if we were to discount some of the bases for credibility, if there is even one legitimate basis for the credibility finding, wouldn't that at least leave in place the finding of lack of credibility with your client? Your Honor, under the substantial evidence test for credibility findings, the immigration judge's credibility finding have to be based on specific and cogent reasons. It is. I just read three pages of it. Your Honor, in his. The coincidence is beyond believability. The fact that she was discerning in her difference between her brother and the other people. And the IJ went through all of these in very, very clear detail. Your Honor, immigration judge's finding that she made these statements, if she was tired, she should have known that by admitting, she would be detained longer. That is purely speculation. And immigration judge's finding that if her brother, if she hadn't spoken to her brother in so many years, that she would give him a ride back into the United States. All these issues are purely speculative. That's where you could say that about every credibility finding. And I appreciate your argument on that. But it seems to me there's got to be some place where the IJ gets to exercise common sense. And it's not really total serendipity and, you know, coincidence beyond belief seems to me to be common sense. And I guess the difficulty for us and for you to convince us is where to draw that line. Because if we were to take your argument in its most pure form, you could never make a credibility finding. Because you would say, I'm looking at him, he's looking nervous. Well, you're conjecturing that that means he's not telling the truth, right? So where do we draw the line here? Because the judge, as Judge Stratton said, went down and made four different credibility findings. Your Honor, based on the totality of circumstances, I believe that there are four reasons why this Court should find in my client's favor. The first reason is that if the statements from her brother, the hearsay statements, are not admitted, the only way the government can convince this Court that my client had smuggled her brother would be based on the I-213, which this Court in Espinoza v. INS found to be highly unreliable in many cases. And then the other thing is based on her own admissions. They're not using statements in the I-213. They had actual witnesses testify. Your Honor, only the government inspector who interrogated her. And the problem with that is? I don't believe that the government can meet the burden based on that one witness. Why not? Because even her own testimony is unreliable because she admitted that she shredded all the notes that she had made during her interrogation. Was the videotape shown? Not, Your Honor. The transcript was introduced, and even the transcript has errors on it. The dates are wrong on the transcript. But the statement on the transcript that we're really talking about, she admits she made. She admitted making those statements. Let me ask you, if we agree with you about the brother situation and the hearsay, and if we deem it to be inadmissible hearsay because of the circumstances, that would not mean that the case would be granted in your client's favor, would it? Wouldn't it need to go at least back to the immigration judge to say, what's your answer if you didn't have the brother? Yes, Your Honor. I agree that this case should be remanded for the immigration judge to have the opportunity to make a finding excluding her brother's hearsay statements. But didn't the board make that finding? When the board affirmed, it said, the respondent admitted this knowledge. That's the knowledge that the brother didn't have papers. The respondent admitted this knowledge in response to two questions presented by the immigration officer. Due to these admissions and the immigration officer's testimony, we will affirm the immigration judge's finding that the DHS established removability by clear and convincing evidence. So didn't the board already make a finding disregarding the brother's testimony? Your Honor, not exactly, because Hernandez-Guardarama case that I just spoke about, that came after the BIA made that finding. So, Your Honor, the BIA did not have that case. But Judge Reinhardt's question presupposes elimination from the brother's evidence. Yes, Your Honor. Maybe they were prescient, that they knew it was coming down the road, and they realized they shouldn't count the brother's testimony in effect because they didn't. Your Honor, in their finding, they said that they agree with the immigration judge's finding that my client was removable. So, in essence, they agreed with all the evidence that the immigration judge relied on in finding that my client had smuggled the brother. Normally, I would agree with you that if they relied on the testimony, which was a major part, but we do look at the board finding, and it seems that the board, for some reason, decided that even without the brother's testimony. So it would appear that in this case, the question is whether without the brother's testimony, there's enough to support it, as the board seems to have said already. Yes, Your Honor. And there you are down to the weaknesses that you allege in relying on the respondent herself and the weaknesses you find in relying on the immigration officer's testimony. Yes, sir. And as far as the respondent submissions, your argument is that it depends on upsetting the credibility finding? Yes, Your Honor. They were highly unreliable, and I believe that under the totality of circumstances of this case, the immigration judge had to take into consideration the amount of time she was interrogated, her educational level, whether she understood the questions, and her reasonable explanation that she was tired, her husband has a heart condition. Do you think that the immigration judge has to say all of that on the record in order to sustain a lack of credibility finding? No, Your Honor, but he has to at least in giving the decision and making the decision take into consideration. In his decision, he cited her brother's testimony at least five times. She said why she should have called her brother in Mexico. And he said that, well, if somebody had made a statement like this against me, I would have gone and asked him why he made those statements against me. And he completely violated due process because by placing the entire burden on my client to refute evidence that the government is presenting against my client. You know, did you talk to your client about whether she would really want this case remanded? She's in detention, isn't she? Yes, Your Honor. She's been there for a while, and if it were remanded, she would remain in detention? Yes. Yes, Your Honor, I've spoken to her, and she's willing to have this case heard again. Does she know how long she may remain in detention if it's heard again? Yes, Your Honor. I told her that it could be quite a while. How long? Quite a while could mean? I would say maybe another year, possibly. If not, twice that. Yes, Your Honor, but if we are unsuccessful on remand, then I will give my client the opportunity to either take a deportation order or to fight this case further. All right. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Your Honor, I'm Felice Schwartz for Respondent Alberto Gonzalez. The facts in this case are clear. Petitioner and her husband left California, went to Mexico with their son, and returned with three people with false papers the next day. They were put into secondary inspection. First of all, she denied being sent to secondary inspection. She still denies in her brief to this Court that she was referred. She just said her husband took a wrong turn. That doesn't happen. There's a specific route. And there was a paper. It seems ridiculous for her to deny that unless somehow she believed it. I mean, it doesn't help her. It doesn't help her, but that proves that she's not credible if she's willing to lie on something. She's still confused about all of this. Yeah. To me, it just proves she's confused. Why would you lie about that? Why would she lie about anything? But the fact is she lies. It's on the record. There's a referral document in the record. Next, she has two statements on videotape which she signed and said it was not underdressing. Yes, I knew my brother didn't have papers. We don't need to get to her brother's statement. She said it. She left California. She returned the next day with three people with bad papers. Of course they're going to ask her, did you know about it? And when she says yes, that's the end of the case. We don't need to get to it doesn't make sense that her brother, whom she hasn't seen in 12 years, would fly from Michoacan, take a flight, meet her and just happen to run into her in Tijuana on that day, and then just say, oh, you want to take me back. I mean, we don't even have to get to how absurd that is and how not credible and how implausible. We have the facts of the record, her testimony. I knew he had bad papers. That's the end of the case. The hearings were conducted in Spanish. The interviews were conducted in Spanish. Her attorney was given the videotape to view. The videotape was brought to the hearing room, but he hadn't asked that it be viewed. They weren't set up for it. He had the transcript. The only problem with the transcript they've ever identified is the date was wrong. Where's the prejudice in that? They could have corrected it there, and they did. This case is based on her admissions and the facts of the case. She left. She came back with people in her car as passengers, people with bad papers, and she admitted that she knew that her brother had bad papers. The government's burden is borne by that, and nothing undermines it. She didn't bring her husband. He chose to go to work that day instead of attend her hearing. She didn't bring her son, who was over 21, to testify. No, we didn't know. It was just coincidence. The arrangements were made with the husband, so where one of the witnesses said we agreed to pay $200, she said she never spoke with them. She said they didn't exchange any words during the several hours that they drove. I mean, just look at the facts of the case and her admission. And although we haven't addressed it here, petitioner made a big issue about the arresting officer shouldn't be the interviewing officer. Not only has she not shown prejudice, but the fact is I don't think she was the arresting officer, the interviewing officer. If you look at the I-213, the arresting officer is named Salvanera. There are four officers who were involved in this detention and this apprehension at the border. And the first one, she was apprehended by Salvanera. So there's no 237 issue here. Well, I mean, that again could be a legitimate misunderstanding of when you're in detention and what officer does what. Absolutely. As opposed to lying. Oh, absolutely. However, you can't make a due process constitutional claim and expect to prevail on it when it's just based on a misunderstanding. She's saying I shouldn't have been interviewed by the arresting officer. There's no evidence that she was. And even if there were, which we do not conceive, as the board found, she failed to demonstrate prejudice. The case, the deportability as an alien smuggler, is entirely based on the facts of the case and her admissions. There's no due process violation. And the government says that the burden has been borne by clear and convincing evidence through her actions and her admissions under oath on videotape and on cross-examination at the hearing. And nothing, there's nothing that compels the Calgary. Thank you, Your Honors. Your Honor, I disagree with the government that a referral slip was introduced in court. In fact, on the day of the hearing, the government did not have any evidence that the case, that a primary inspecting officer had referred the case to the secondary inspecting officer. In fact, the officer said that she doesn't remember seeing a slip. Number two, prejudice is established. Where does the I.J. get the information then about the referral to secondary? Your Honor, on cross-examination, when my client's attorney asked her if she was referred by a primary officer to a secondary officer, she said she was not. And when her attorney asked the officer, she said that she doesn't remember it. And it was only at the end of the hearing that the government counsel said that, well, we didn't think it was important. And my client's attorney still never saw it, but he agreed that, okay, if the government is admitting that it was. And number two, prejudice is – So there was evidence before the court that there was a referral slip to secondary. Even if there was – Was there or wasn't there? Yes, Your Honor. Yes. Please don't tell us there wasn't. Yes. But it was introduced after the hearing. Irrelevant. Your Honor, and the second thing is prejudice is established when the evidence is so unreliable that it implicates due process. I understand that just simply violating a regulation does not make – does not by itself a violation of due process. But when prejudice is established, I believe that officer did not even have the notes, the inspecting officer did not even have the notes she allegedly took when she interrogated my officer. But you need the notes when you have a transcript of a videotape. Your Honor, she claimed that my client had admitted to her prior to that videotape testimony that she had taken – that she had admitted to smuggling her brother. That's kind of icing on the cake if you have the actual testimony recorded, isn't it? No, Your Honor, it's not. Because on – she took those statements and she took those statements and her brother's statement that she also took that she allegedly destroyed the notes in coming to the conclusion that my client's – and that led to further interrogation. So I believe that that was highly prejudicial to my client. And lastly, Your Honor, I will say that the Supreme Court has held and this Court has also held that banishing a long-time resident of this country is a very serious thing, and the Court has to look at all evidence in its entirety before it comes to such a severe penalty. And we believe that my client is entitled to have this case reheard, excluding her brother's testimony, which was so prejudicial to her. Thank you. Thank you, counsel. Case disbarred. You will be submitted.
judges: Reinhardt, Trott, McKeown